UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM QUINCE,

                              Plaintiff,                    5:14-CV-0140
                                                           (GTS/ATB)
v.

ANOPLATE CORPORATION,

                              Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

WILLIAM QUINCE
  Plaintiff, *Pro Se*
335 West Seneca Turnpike
Syracuse, NY 13207

BARCLAY DAMON, LLP                                EDWARD G. MELVIN, ESQ.
  Counsel for Defendants
One Park Place
300 South State Street
Syracuse, NY 13202-2078

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* employment civil rights action filed by William

Quince ("Plaintiff") against Anoplate Corporation ("Defendant"), are Defendant's motion for

summary judgment and Plaintiff's motion to reopen discovery. (Dkt. Nos. 34, 43.) For the

reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

## I.       RELEVANT BACKGROUND

### A.       Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges that, while he was employed

by Defendant between 2008 and 2010 (first as a production trainee and then as a Plater I),

Defendant wrongfully denied his application for a promotion to an open managerial position on

three occasions due to a purported lack of qualifications, denied him an opportunity to transfer to

a lateral position, and sent him home early from work one day, based on his race (African-

American) and age (46 to 48 years).  (Dkt. No. 1 [Plf.'s Compl.].)  Plaintiff's Complaint also

alleges that, shortly after he left the employment of Defendant, Defendant falsely told possible

employers that Plaintiff had been terminated for stealing copper bars.  (*Id.*)

Based on these factual allegations, Plaintiff's Complaint asserts four claims against

Defendant: (1) a claim that Defendant discriminated against him based on his race, in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) a claim

that Defendant discriminated against him based on his race, in violation of New York State

Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("Human Rights Law"); (3) a claim that

Defendant defamed him under New York State common law; and (4) a claim that Defendant

discriminated against him based on his age, in violation of the Age Discrimination in

Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA").  (*Id.*)

Familiarity with these claims, and the factual allegations supporting them, is assumed in

this Decision and Order, which is intended primarily for the review of the parties.  (*Id.*)

**B. Parties' Briefing on Their Motions**

    **1. Parties' Briefing on Defendant's Motion for Summary Judgment**

        **a. Defendant's Memorandum of Law**

Generally, in its memorandum of law, Defendant argues that it is entitled to judgment as a matter of law based on the current record for four reasons. (Dkt. No. 37 [Def.'s Memo. of Law].) First, Defendant argues that Plaintiff's failure-to-promote claims under Title VII and the ADEA are untimely because they were not asserted in an administrative complaint filed within 300 days of the alleged discriminatory conduct; and, in any event, they are unsupported by admissible record evidence from which a rational fact finder could conclude that Defendant refused to promote Plaintiff due to his race or age, because (a) he cannot establish a prima facie case of such discrimination, (b) Defendant has shown a legitimate non-discriminatory reason for taking the alleged discriminatory actions, and (c) Plaintiff cannot demonstrate that the reasons given by Defendant for its adverse action were not the true reasons but were a pretext for discrimination. (*Id.*)

Second, Defendant argues that Plaintiff's denial-of-transfer claims under Title VII and the ADEA are untimely and in any event are unsupported by admissible record evidence from which a rational fact finder could conclude that Defendant refused to promote Plaintiff because of his race or age given that the denial of a transfer is not an adverse employment action. (*Id.*)

Third, Defendant argues that Plaintiff's termination-of-employment claims under Title VII and the ADEA are untimely and in any event are unsupported by admissible record evidence from which a rational fact finder could conclude that Defendant refused to promote Plaintiff because of his race or age given that he was terminated for stealing copper bars from Defendant and not because of his race or age. (*Id.*)

Fourth, Defendant that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim; and, even if it exercises such supplemental jurisdiction, it should dismiss his state discrimination claims for the same reasons that it dismisses his federal claims, and it should dismiss his state defamation claim as untimely and/or precluded by a qualified privilege for communications addressing an employee's performance, character or termination. (*Id.*)

### b. Plaintiff's Opposition Memorandum of Law

Liberally construed, Plaintiff's opposition memorandum of law argues that he has adduced evidence (specifically, his deposition) from which a rational fact finder could conclude that Defendant's decisions to not promote him and then to terminate him were motivated, at least in part, by discrimination and that his purported lack of qualifications and his purported theft of copper bars were pretexts for discrimination. (Dkt. No. 44 [Plf.'s Opp'n Memo. of Law].)

### c. Defendant's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant argues that its motion should be granted for four reasons.    (Dkt. No. 45 [Def.'s Reply Memo. of Law].)  First, Defendant argues that all properly supported facts asserted in its Statement of Material Facts must be deemed "admitted" by Plaintiff for purposes of Defendant's motion, because Plaintiff has failed to support his various denials of Defendant's factual assertions with a specific citation to the record, as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court.  (*Id.*)

Second, Defendant argues that almost all of the facially meritorious legal arguments asserted by Defendant in its memorandum of law must be deemed "consented to" by Plaintiff (e.g., Defendant's argument that Plaintiff was not discriminated against based on his age, that the

statute of limitations has expired for all of his failure-to-promote claims, and that his defamation claim should be dismissed), because he has failed to oppose those arguments, as required by Local Rule 7.1(b)(3).  (*Id.*)

Third, Defendant argues that, in any event, Plaintiff's reliance on his purported actual innocence of the theft accusation (in arguing, in his response, that the theft was a pretext for racially discriminating against him by terminating his employment) misses the point because, in discrimination cases, what matters is not the truth of such accusations but what motivated the employer (and, here, unrefuted evidence exists that there was a theft, an accusation of Plaintiff by a co-worker, and a thorough investigation by Defendant).  (*Id.*)

Fourth, Defendant argues that, in any event, Plaintiff's argument that Defendant's failure to promote Plaintiff was caused by racial discrimination is undermined by the fact that his own supervisor, Cory Corridors, is African-American, and that Plaintiff implemented a training plan for Plaintiff to become a third-shift back-up supervisor.  (*Id.*)

### 2. Parties' Briefing on Plaintiff's Motion to Reopen Discovery

#### a. Plaintiff's Memorandum of Law

Liberally construed, Plaintiff's memorandum of law argues that discovery should be reopened for four reasons.  (Dkt. No. 43 [Plf.'s Memo. of Law].)  First, Plaintiff argues that the purpose of re-opening discovery is to (a) permit him to serve Defendant with interrogatories and requests for documents (specifically, requests for termination records and promotion records) in an effort to "show a pattern of discriminatory intent in terminations and promotions," and (b) depose Christy Leclair to resolve "certain inconsistencies that I dispute and . . . am just now aware [of] due to her declarations in support of [Defendant's] motion for summary judgment." (*Id.*)

Second, Plaintiff argues that the reason he needs the discovery in question is that it "would greatly help me to present evidence in my favor that will support my opposition [to] the summary judg[]ment motion." (*Id*.)

Third, Plaintiff argues that the reason he did not serve the desired document requests earlier is that "[t]his is my first time handling a court case and I was not aware that I could ask for past termination records and promotion records to show the pattern of discriminatory intent." (*Id*.)

Fourth, Plaintiff argues that the reopening of discovery will not unduly prejudice Defendant because (a) "we have a great deal of time before trial," and (b) Defendant has "more than enough time to respond to my request." (*Id*.)

### b.     Defendant's Opposition Memorandum of Law

Generally, in its opposition memorandum of law, Defendant argues that Plaintiff's motion must be denied for the following three reasons. (Dkt. No. 47 [Def.'s Opp'n Memo. of Law].) First, Defendant argues that Plaintiff's motion is untimely because (a) discovery closed on December 12, 2014, more than three-and-a-half months before the motion was filed and (b) Plaintiff had reason to know he could obtain the information sought during the discovery period (which lasted six months). (*Id*.)

Second, Defendant argues that, in any event, Plaintiff fails to show by affidavit or declaration (a) what *facts* are sought to resist the motion, or (b) how those facts are *reasonably expected* to create a genuine dispute of material fact. (*Id*.)

Third, Defendant argues that, in any event, to allow such additional discovery at this late date would be unfair to Defendant and would afford Plaintiff an undeserved tactical advantage

by allowing him to conduct discovery after he has had the benefit of seeing Defendant's factual and legal arguments based on what Defendant believed was the complete factual record. (*Id.*)

Fourth, Defendant argues that, in any event, the discovery sought is futile, because it is relevant to only a pattern-or-practice claim, and a private, non-class, pattern-or-practice claim cannot be maintained by an individual such as Plaintiff, who is asserting an individual disparate treatment claim. (*Id.*)

### C. Undisputed Material Facts

The following material facts have been asserted and supported by Defendant in its Statement of Material Facts, and not denied in a matching numbered paragraph with a supporting record citation by Plaintiff in his response thereto, and thus admitted pursuant to Local Rule 7.1 of the Local Rules of Practice for this Court, as explained below in Part II.A. of this Decision and Order. (*Compare* Dkt. No. 38 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 44 [Plf.'s Rule 7.1 Response].)

<u>Defendant</u>

1.      Defendant is an industrial metal finishing company located in Syracuse, New York. Its services include surface engineering and finishing (e.g., copper, nickel, chromium, etc.) through several different processes such as anodizing, electroplating, electroless nickel, and other conversion coatings. Defendant was founded in 1960 by Milt Stevenson, Sr., and many members of his family continue to lead and manage the company.

2.      As of July 2012, which is when Plaintiff was terminated from Defendant at age 49, almost 44% of Defendant's employees were age 49 and older while almost 9% of its employees were African-American. (*Compare* Dkt. No. 38, at ¶ 2 [Def.'s Rule 7.1 Statement,

asserting facts and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 2 [Plf.'s Rule 7.1 Response, admitting termination from Defendant at age 49 in July 2012, and failing to deny other above-stated facts with accurate record citation].)

<u>Plaintiff Begins Employment at Defendant in August 2008, and<br>Is Demoted to Production Assistant 1 by February 2009</u>

3.      Plaintiff was hired by Defendant on August 11, 2008.

4.      As with most other entry-level employees at Defendant, Plaintiff was hired as a Production Trainee. (*Compare* Dkt. No. 38, at ¶ 4 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 4 [Plf.'s Rule 7.1 Response, admitting he was hired as a Production Trainee, and failing to deny other above-stated fact with accurate record citation].)

5.      As a Production Trainee, Plaintiff assisted the Platers and other skilled workers with their production needs.

6.      During an employee's first weeks as a Production Trainee, Defendant typically determines whether a Production Trainee possesses the skill and desire necessary to be placed on Defendant's "Plater track," or whether the employee is more suited for its "Production Assistant track."

7.      As reflected in the "Production Trainee" flowchart attached to the LeClair Declaration as Exhibit "C," the Plater track provides more room for advancement and better pay than the Production Assistant track. For example, whereas both tracks involve plating and finishing, depending on the employee's certification in a variety of finishing and plating processes. In contrast, an employee on the Plater track can advance to the position of Plater 4 and earn $16 to $25 per hour; an employee on the Production Assistant track can advance only to the position of Production Assistant 3, earning at most $13 to $17 per hour.

8.      On September 22, 2008, Plaintiff was placed on the Plater track, and became a Plater Trainee.

9.      Plaintiff, however, had difficulty learning the plating/finishing process for Electroless Nickel.  (*Compare* Dkt. No. 38, at ¶ 9 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 9 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

10.      As a result, on February 22, 2009, Defendant demoted Plaintiff to the position of Production Assistant 1, which was on the Production Assistant track. (*Compare* Dkt. No. 38, at ¶ 10 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 10 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

11.      In moving Plaintiff to the Production Assistant 1 position, Plaintiff's supervisor stated as follows:

> Bill has not been able to meet the criteria of a Plater L1 in EN [Electroless Nickel].  Bill has not been able to pick up on plating in EN very easily. He is an asset [sic] to the Blue Line, and he is a hard worker, but for now he will be classified as a PA1 [Production Assistant 1].

(*Compare* Dkt. No. 38, at ¶ 11 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 11 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)


## Plaintiff Is Transferred to Black Oxide, and then Promoted to Plater Trainee

12.      On April 20, 2009, Defendant transferred Plaintiff from being a Production Assistant in Electroless Nickel to being a Production Assistant in Black Oxide.

13.     Defendant transferred Plaintiff to Black Oxide in an effort to certify him in a less complicated finish, as Black Oxide is considered to be on the "low" end of the plating "finish difficulty" spectrum, whereas Electroless Nickel is considered to be a "moderate" level of "finish difficulty."  (*Compare* Dkt. No. 38, at ¶ 13 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 13 [Plf.'s Rule 7.1 Response, admitting fact that black oxide is an easier finish than Nickel, and failing to deny other above-stated s with accurate record citation].)

14.     In Summer 2009, Plaintiff applied for and received a promotion from the Production Assistant track onto the Plater track as a Plater Trainee.

<u>Plaintiff Applies for Second Shift Supervisor Position in May 2010;</u>
<u>Defendant Selects 55-Year Old Applicant with</u>
<u>Twenty-Five Years of Supervisory Experience in Manufacturing</u>

15.     In May 2010, Plaintiff applied for Defendant's Second Shift Supervisor opening.

16.     Four internal candidates, including Plaintiff, and five external candidates applied for the Second Shift Supervisor position in May 2010.  Of the four internal candidates, Defendant interviewed only Plaintiff.

17.     Defendant selected one of the external candidates, Joseph Jarvis, for the Second Shift Supervisor position.

18.     Prior to applying for the Second Shift Supervisor position with Defendant, Mr. Jarvis had been a Production Superintendent at Crucible Specialty Metals for twenty-two years as well as a Production Supervisor at Magna Powertrain (New Process Gear) for three years, and held a Bachelor's Degree in Science with a major in Business Management and Economics.

19.     Mr. Jarvis was fifty-five years old when he started at Defendant on June 2, 2010, as he was born in 1955.

20.     In his Complaint, Plaintiff alleges that upon not receiving the Second Shift Supervisor position in May 2010, Defendant "provided [him] with a list of skills," and was "informed that if [he] wanted to be considered for a position in the future . . . then [he] should learn the skills on the list." (*Compare* Dkt. No. 38, at ¶ 20 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 20 [Plf.'s Rule 7.1 Response, admitting he was verbally provided with a list of skills, and failing to deny other above-stated fact with accurate record citation].)

21.     At Plaintiff's deposition, however, Plaintiff testified that he in fact did not receive a list of skills from Defendant, but instead "was just told to learn more about the company and to learn different areas."

22.     On June 7, 2010, Plaintiff received his Level 1 certification in Black Oxide and a promotion to Plater 1.

23.     In order to progress to the positions of Plater 2, 3, and 4, Platers must receive certification in additional plating and finishing processes.  In general, Defendant evaluates internal candidates for supervisory positions based in part on how quickly they learn and master plating and finishing processes.  (*Compare* Dkt. No. 38, at ¶ 23 [Def.'s Rule 7.1 Statement, asserting facts and supporting assertion with accurate record citations] *with* Dkt. No. 44, at ¶ 23 [Plf.'s Rule 7.1 Response, denying personal knowledge of facts, which is insufficient to create a genuine dispute, and in any event failing to support any denial of facts with accurate record citation].)

24.     In January 2011, Plaintiff received his Level 2 certification in Black Oxide.

<u>Plaintiff Fails to Apply for Second Shift Supervisor Position in 2011</u>

25.     In March 2011, an opening became available again for the Second Shift Supervisor position.

26.     In her role as Defendant's Vice-President for Human Resources, Christy LeClair received and collected all of the internal candidates' applications and submissions for the March 2011 Second Shift Supervisor opening.

27.     Plaintiff did not apply for the Second Shift Supervisor opening in 2011; and, in any event, any application that Plaintiff may have made for the Second Shift Supervisor opening in 2011 was not received by the Selection Committee for that position.  (*Compare* Dkt. No. 38, at ¶ 27 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 27 [Plf.'s Rule 7.1 Response, not providing record citation controverting fact].)

28.     Plaintiff never advised Ms. LeClair or anyone else in Human Resources that he was interested in applying for the Second Shift Supervisor position in 2011. (*Compare* Dkt. No. 38, at ¶ 28 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 28 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

29.     In April 2011, Defendant awarded the Second Shift Supervisor position to Chris Comunale, who had been a Manager at Defendant for four years (Manager is a higher position than Shift Supervisor) and also had been a supervisor in the Army for many years prior to joining Defendant.  (*Compare* Dkt. No. 38, at ¶ 29 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 29 [Plf.'s Rule 7.1 Response, denying that Chris Comunale had been a Manager at Defendant for four years but not

supporting denial with accurate record citation, and failing to deny with accurate record citation that Chris Comunale also had been a supervisor in the Army for many years prior to joining Defendant].)

30.     After Mr. Comunale resigned from Defendant in late June 2011, Defendant did not repost the Second Shift Supervisor opening internally, and eventually selected an external candidate named Joseph Giardino.  (*Compare* Dkt. No. 38, at ¶ 30 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 30 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

31.     Mr. Giardino had several years of management experience in manufacturing. (*Compare* Dkt. No. 38, at ¶ 31 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 31 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

32.     By the time Mr. Giardino was hired in Summer 2011, he was fifty-six years old, as he was born in 1955.  (*Compare* Dkt. No. 38, at ¶ 32 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 32 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

33.     On July 18, 2011, Plaintiff received his Level 3 certification in Black Oxide.

34.     In August 2011, Plaintiff received a rating of 3.1 on his annual performance evaluation.

35.     On February 6, 2012, Plaintiff received a Level 1 certification in the Passivate finish.

<u>Plaintiff Applies for Second Shift Supervisor Position in April 2012;</u>
<u>Defendant's Selection Team Unanimously Selects Mario Baric for the Position</u>

36.　　In mid-April 2012, Mr. Giardino left Defendant.  (*Compare* Dkt. No. 38, at ¶ 36 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 36 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

37.　　On April 20, 2012, Defendant posted the Second Shift Supervisor opening internally.

38.　　Plaintiff applied for the Second Shift Supervisor position in April 2012.  Two other internal candidates, Ben Black and Mario Baric, also applied for the Second Shift Supervisor position.

39.　　Defendant's selection team included Christy LeClair, Defendant's Vice-President for Human Resources, its Vice-President of Operations, the Director of Facilities, the Director of Training, four Production Managers, and the Environmental Operations Supervisor.

40.　　After interviewing all three candidates, the selection team unanimously selected Mario Baric over Plaintiff for the Second Shift Supervisor position.  (*Compare* Dkt. No. 38, at ¶ 40 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 40 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

41.　　Mr. Baric has been employed by Defendant since June 23, 2008, and is a refugee from Bosnia of Serbo-Croatian descent. (*Compare* Dkt. No. 38, at ¶ 41 [Def.'s Rule 7.1

Statement, asserting facts and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 41 [Plf.'s Rule 7.1 Response, admitting Mr. Baric is a Caucasian male, and failing to deny other above-stated facts with accurate record citation].)

42.     Mr. Baric was chosen over Plaintiff because of Mr. Baric's ability to communicate effectively as well as his proven capacity to learn and advance at Defendant, as demonstrated by achieving nine levels of certification in four different finishes, including four Level 2s and a Level 3 in Hardcoat Anodize, which is considered to be a "moderate" level of difficulty on the "finish difficulty" spectrum.  (*Compare* Dkt. No. 38, at ¶ 42 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 42 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

43.     In contrast, during roughly the same period of time that Mr. Baric was employed, Plaintiff achieved only four levels of certification in two different finishes, Black Oxide and Passivate.

44.     Black Oxide and Passivate are considered to be on the "low" level of difficulty on the "finish difficulty" spectrum.

45.     Whereas Mr. Baric was certified in four Level 2s and one Level 3, Plaintiff was only certified in one Level 2.  (*Compare* Dkt. No. 38, at ¶ 45 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 45 [Plf.'s Rule 7.1 Response, admitting Plaintiff was only certified in one Level 2, denying personal knowledge of other above-stated fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of that other above-stated fact with accurate record citation].)

46.     Moreover, as a result of receiving four Level 1 certifications, Mr. Baric had been promoted to Plater 2 in 2010, whereas Plaintiff was still a Plater 1 by May 2012.  (*Compare* Dkt. No. 38, at ¶ 46 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 46 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

47.     Mr. Baric also received a 3.4 score in his last performance evaluation whereas Plaintiff received a 3.1. (*Compare* Dkt. No. 38, at ¶ 47 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 47 [Plf.'s Rule 7.1 Response, admitting Plaintiff received a 3.1 in his last performance evaluation, denying personal knowledge of other above-stated fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of that other above-stated fact with accurate record citation].)

48.     Further, Plaintiff did not communicate effectively during his interviews with the selection team, leaving members of the team questioning whether he would be able to communicate effectively as a supervisor. (*Compare* Dkt. No. 38, at ¶ 48 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 48 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

49.     In his Complaint, Plaintiff alleges that Mr. Baric received the Second Shift Supervisor position in May 2012 "despite the fact" that Plaintiff "was certified in nine different types of plating and had roughly twenty years of supervisory experience."

50.     At Plaintiff's deposition, however, Plaintiff agreed that he was not "certified in nine different types of plating," and that he did not have "roughly twenty years of supervisory experience." (*Compare* Dkt. No. 38, at ¶ 50 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 50 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

<u>Defendant Implements Supervisor Training Program for Plaintiff in June 2012;
However, Plaintiff's Training Program Is Scuttled Because of Plaintiff's Suspension
(and Later Termination) for Stealing Copper Bars from Defendant</u>

51.     On or about May 18, 2012, Defendant advised Plaintiff that he was not receiving the Second Shift Supervisor promotion.

52.     During this time, Defendant offered Plaintiff the opportunity to train as a back-up shift supervisor, with the expectation that Plaintiff would become a regular supervisor at Defendant in the future. (*Compare* Dkt. No. 38, at ¶ 52 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 52 [Plf.'s Rule 7.1 Response, admitting facts, asserting that Defendant trained Plaintiff for only one day, but failing to support assertion with accurate record citation].)

53.     By June 15, 2012, Defendant's Director of Production Training, Jill Boyle, had developed a training plan for Plaintiff to become a back-up shift supervisor. (*Compare* Dkt. No. 38, at ¶ 53 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 53 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

54.     On June 15, 2012, Ms. Boyle met with Plaintiff's supervisor, Cory Corridors, to discuss Defendant's plan for Plaintiff to become a back-up supervisor.  (*Compare* Dkt. No. 38, at

¶ 54 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 54 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

55.     Mr. Corridors began to implement the supervisor training plan with Plaintiff over the next two weeks. (*Compare* Dkt. No. 38, at ¶ 55 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 55 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with specific record citation].)

56.     As with Plaintiff, Mr. Corridors is African-American, and has been Defendant's Third Shift Supervisor since 2007.  (*Compare* Dkt. No. 38, at ¶ 56 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 56 [Plf.'s Rule 7.1 Response, admitting Mr. Corridors is African American, and failing to deny other above-stated facts with accurate record citation].)

57.     Defendant's plan to train Plaintiff to be a back-up supervisor, however, was scuttled by July 5, 2012, when Plaintiff was suspended as a result of his possible theft of copper bars from Building 459 on Defendant's campus. (*Compare* Dkt. No. 38, at ¶ 57 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 57 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

Plaintiff Is Suspended and Terminated for Stealing Copper Bars from Defendant;
Vice-President for Human Resources Christy LeClair Conducts Thorough Investigation

58.     On Monday, July 2, 2012, it was discovered that two copper bars were missing from the zinc tank area in Defendant's Building 459. (*Compare* Dkt. No. 38, at ¶ 58 [Def.'s Rule

7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 58 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

59.     Employees in the zinc tank area reported last seeing the copper bars as late as the second shift on Friday, June 29, 2012. (*Compare* Dkt. No. 38, at ¶ 59 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 59 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

60.     Once it was determined that the copper bars were missing, Danny Simcoe, an employee of Defendant, contacted Eric Stevenson and reported that he witnessed Plaintiff take the copper bars on Saturday, June 30, 2012.

61.     These copper bars were approximately five to six feet long.

62.     According to Mr. Simcoe, Plaintiff informed Mr. Simcoe of his intentions to cut the bars into pieces and have a friend sell them to a scrap metal business, Ben Weitsman-Upstate Shredding, located in Solvay, New York. (*Compare* Dkt. No. 38, at ¶ 62 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 62 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

63.     On Tuesday, July 3, 2012, Mr. Stevenson visited Ben Weitsman to look for Defendant's missing copper bars, and found cut-up pieces of copper bar matching the copper bars missing from Defendant. (*Compare* Dkt. No. 38, at ¶ 63 [Def.'s Rule 7.1 Statement, asserting

fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 63 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

64.     Mr. Stevenson took a picture of the pieces of copper bar he found at Ben Weitsman. (*Compare* Dkt. No. 38, at ¶ 64 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 64 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

65.     The characteristics of the missing copper bars found at Ben Weitsman are unique to Defendant.  Whereas most copper sold to scrap metal dealers is in the form of hollow tubing used in household plumbing, the copper bars used by Defendant are solid copper between 1 1/2 and 2 inches thick.  For this reason, when Mr. Stevenson asked one of Ben Weitsman's employees about these particular copper bars, the employee knew immediately where the copper bars were located.  The Ben Weitsman employee also told Mr. Stevenson that a tall black man and a shorter black man brought the copper bars to the Ben Weitsman scrapyard.  Plaintiff is a tall black man.  (*Compare* Dkt. No. 38, at ¶ 65 [Def.'s Rule 7.1 Statement, asserting facts and supporting assertion with accurate record citations] *with* Dkt. No. 44, at ¶ 65 [Plf.'s Rule 7.1 Response, denying facts but not supporting denial with specific record citation].)

66.     On Thursday, July 5, 2012,  Ms. LeClair interviewed Mr. Simcoe, Plaintiff, and one of their co-workers, Will Watts, regarding the missing copper bars.  According to Plaintiff, when he met with Ms. LeClair, he was told that there had been a theft.  (*Compare* Dkt. No. 38, at ¶ 66 [Def.'s Rule 7.1 Statement, asserting facts and supporting assertion with accurate record citations] *with* Dkt. No. 44, at ¶ 66 [Plf.'s Rule 7.1 Response, denying facts but not supporting denial with specific record citation].)

67.     When Ms. LeClair asked Plaintiff about the missing copper bars, Plaintiff denied any knowledge. (*Compare* Dkt. No. 38, at ¶ 67 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 67 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with specific record citation].)

68.     Plaintiff admitted to Ms. LeClair, however, that he was in Building 459 over the weekend on Saturday, June 30th.

69.     Plaintiff's presence in Building 459 on June 30th was confirmed by Defendant's Punch Source Report for Building 459 on June 30, 2012, which demonstrates that Plaintiff entered the 459 Building at 5:52 a.m.

70.     Plaintiff was suspended on July 5, 2012, pending further investigation of the missing copper bars. (*Compare* Dkt. No. 38, at ¶ 70 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 70 [Plf.'s Rule 7.1 Response, admitting suspension and denying other above-stated fact without accurate record citation].)

71.     As part of Ms. LeClair's investigation, she also interviewed Plaintiff's co-workers Zoran Brne (twice), Steve Eisinger (twice), Don Lewis, and John Hogle, as well as the Morris Security Guard, Mark Phillips. (*Compare* Dkt. No. 38, at ¶ 71 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 71 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

72.     As part of her investigation, Ms. LeClair also spoke with Plaintiff's supervisor, Cory Corridors, who advised that Mr. Simcoe seemed to be telling the truth, as Mr. Simcoe had nothing to gain from falsely reporting that Plaintiff took the copper bars.  (*Compare* Dkt. No. 38, at ¶ 72 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 72 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

73.     After conducting her investigation, Ms. LeClair concluded as follows:

> Although there is no [corroborated] proof indicating Bill Quince and it is only Bill's word against Dan Simcoe's word it is the opinion of this investigator that Dan Simcoe is reporting the truth.  Danny was able to lead us to the scrap yard that indeed had the missing copper bars; cut just as he said they were which he would not have been able to do if this were pure sabotage.  Danny was also able to provide plausible details as to how Bill got the bars out of the building.

(*Compare* Dkt. No. 38, at ¶ 73 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 73 [Plf.'s Rule 7.1 Response, denying fact but not supporting denial with accurate record citation].)

74.     Based on her investigation, Ms. LeClair recommended to Defendant that "Bill Quince's employment should be terminated as even under the inconclusive evidence it is too much of a risk to return him to employment." (*Compare* Dkt. No. 38, at ¶ 74 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 74 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

75. Thereafter, Defendant's Chief Executive Officer, James Stevenson, and Ms. LeClair decided to terminate Plaintiff's employment effective July 10, 2012. (*Compare* Dkt. No. 38, at ¶ 75 [Def.'s Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 44, at ¶ 75 [Plf.'s Rule 7.1 Response, denying personal knowledge of fact, which is insufficient to create a genuine dispute, and in any event failing to support any denial of fact with accurate record citation].)

76. When Ms. LeClair telephoned Plaintiff on July 10, 2012, and advised him that he was terminated, Plaintiff stated as follows: he "wasn't coming back anyway"; he did not like being accused of anything; and he did not want to return to a place where people thought he "was guilty of stuff."

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[1] This is largely because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.[2] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[3]

---

[1]      *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[2]      *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[3]      *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

Of course, when a non-movant has failed to respond to a movant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the movant's motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the movant's motion does is lighten the movant's burden on its motion.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to be admitted, to the extent that those facts are supported by evidence in the record, where the nonmoving party has willfully failed to properly respond to that statement.[4]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[5] Stated another way, when a non-movant fails to oppose a legal argument

---

[4]    Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[5]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.     Standard Governing Motion to Reopen Discovery

Rule 56(d) of the Federal Rules of Civil Procedure provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  This rule has been appropriately characterized as providing as "a narrow exception to the availability of summary judgment in instances where a party cannot fairly respond to a summary judgment motion because of the inability, through no fault of that party, to acquire evidence which is available and would preclude the entry of summary judgment." *Steptoe v. City of Syracuse*, 09-CV-1132, 2010 WL 5174998, at *4 (N.D.N.Y. Oct 5, 2010) (Peebles, M.J.), *adopted by* 2010 WL 5185809 (N.D.N.Y. Dec. 15, 2010) (Mordue, C.J.).[6]  To obtain relief under Fed. R. Civ. P. 56(d), a litigant must submit an affidavit showing "(1) what

---

[6]     *Accord, Gill v. Calescibetta*, 00-CV-1553, 2009 WL 890661, at *7 (N.D.N.Y. March 31, 2009) (Report-Recommendation by Peebles, M.J., adopted by Suddaby, J.); *Gill v. Hoadley*, 261 F. Supp.2d 113, 132 (N.D.N.Y. 2003) (Peebles, M.J.), *adopted by* Memorandum-Decision and Order (N.D.N.Y. filed Jan. 9, 2004) (Scullin, C.J.).

facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant has been unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2d Cir. 2003).[7] This rule applies even to *pro se* litigants. *See, e.g., Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13-14 (2d Cir. 2013) (affirming denial of request for additional discovery by *pro se* litigant opposing motion for summary judgment); *accord, Falso v. Rochester City Sch. Dist.*, 460 F. App'x 60, 61-62 (2d Cir. 2012).

Furthermore, when the request is made after the discovery period has closed, good cause must be shown. Fed. R. Civ. P. 16(b)(4). (*See also* Dkt. No. 25, at 1 [Uniform Pretrial Scheduling Order].) Again, this rule applies even to *pro se* litigants. *See, e.g., Crandall v. David*, 457 F. App'x 56, 59 (2d Cir. 2012).

## C. Standards Governing Plaintiff's Claims and Defendant's Defenses

Because Defendant has (in its memoranda of law) recited the correct legal standards governing Plaintiff's claims and Defendant's defenses, the Court will not repeat those standards in this Decision and Order, which is intended primarily for the review of the parties.

## III. ANALYSIS

### A. Defendant's Motion for Summary Judgment

After carefully considering the matter, the Court grants Defendant's motion for the reasons stated in their memoranda of law. *See, supra,* Part I.B.1. of this Decision and Order. To

---

[7]  *Accord, Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985); *Capital Imaging Assoc., P.C. v. Mohawk Valley Medical Assoc., Inc.*, 725 F. Supp. 669, 680 (N.D.N.Y. 1989) (McCurn, C.J.), *aff'd*, 996 F.2d 537 (2d Cir. 1993).

those reasons the Court adds only two points.

First, before responding to Defendant's motion, Plaintiff received a copy of the District's detailed Notification of the Consequences of Failing to Respond to a Summary Judgment Motion. (Dkt. No. 34, Attach. 1.) Moreover, Plaintiff received an extension of the deadline by which to respond to the motion. (Text Order filed Feb. 23, 2015.) Based on these facts, the Court is confident that Plaintiff has received sufficient notice of the consequences of his failure to properly respond to Defendant's Statement of Material Facts and memorandum of law. *Champion*, 76 F.3d at 486. As a result, the Court finds that Plaintiff's failures were willful.

Second, far from automatically granting Defendant's motion, the Court has assured itself that Defendant has met its threshold burden on its motion by reviewing the record evidence cited by Defendant and the facial merit of the legal arguments asserted by Defendant. Having done so, however, the Court concludes that Defendant has satisfied its lightened burden.

For all of these reasons, the Court grants Defendant's motion for summary judgment.

**B.**      **Plaintiff's Motion to Reopen Discovery**

After carefully considering the matter, the Court denies Plaintiff's motion for the reasons stated in Defendant's opposition memorandum of law. *See, supra,* Part I.B.2. of this Decision and Order. To those reasons the Court adds only one point. In addition to the reasons asserted by Defendant, the Court relies on the fact that Plaintiff has not shown, by affidavit or declaration, what effort he has made to obtain the discovery in question, and why he was unsuccessful in those efforts. The Court notes that clearly Plaintiff knew, during the discovery period, that he could submit document requests for his co-workers' employment records. (Dkt. No. 47, Attach. 6; Dkt. No. 47, Attach. 7, at 2-6.)

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 34) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to reopen discovery (Dkt. No. 43) is **DENIED**; and it

is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 25, 2015
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge